IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Gary Robinette, ) | |
| ) | Civil Action No. 8:05-1163-GRA-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Gary Robinette, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 45 years old at the time of his alleged onset of disability and 47 years old on the date of the ALJ's decision. The plaintiff has a high school education and past relevant work as a welder, quality control inspector, and truck driver. The plaintiff has not engaged in substantial gainful activity (SGA) since the alleged onset date of October 21, 2002. Medical records reveal that the plaintiff has a past history of Legg-Calve-Perthes Disease (LCPD), back problems, and decompression laminectomy at L-4.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff underwent total right hip replacement on November 19, 2002, as a result of severe osteoarthritis secondary to LCPD. (R. 139.) A Dr. Wright Skinner noted in the one year follow-up to the total hip replacement that the replacement was doing extremely well. (R. 138.) He also noted the "possible avascular necrosis"[1] in his left hip. *Id*. Dr. Skinner was concerned regarding the degeneration of the plaintiff's lumbosacral spine and the fact that his hips are involved. *Id*. Dr. Skinner believed the plaintiff to be totally disabled. *Id*.

The plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401- 433, alleging an onset of disability of October 21, 2002. (R. 63.) The plaintiff's application was denied initially and upon reconsideration. (R. 27-47.) Following an administrative hearing on July 29, 2004 (R. 391-417), the Administrative Law Judge (ALJ) found, in a decision dated December 2, 2004 (R. 14-25), that the plaintiff retained the residual functional capacity (RFC) to perform sedentary work with a sit/stand option in a low stress, non-sequential production job and was not disabled within the meaning of the Act. The Appeals Council denied the plaintiff's request for review (R. 6-8), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 404.981.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

2

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389

(1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) finding that the plaintiff could perform sedentary work; and (2) determining that the plaintiff was capable of meaningful work although he has limitations in his upper extremities and relies on a walking cane; cannot maintain necessary pace and persistence; and suffers a combination of ailments.

### I.    RESIDUAL FUNCTIONAL CAPACITY

The plaintiff primarily complains that the ALJ's determination that the plaintiff could perform sedentary work was in error because neither the ALJ nor the vocational expert properly considered the plaintiff's need to frequently alternate between sitting and standing. Specifically, the plaintiff argues, in reliance on Social Security Ruling ("SSR") 83-12, that the definition of sedentary work does not include a sit/stand option and, therefore, it was

4

error for the ALJ to conclude that the plaintiff could perform sedentary work, considering he suffers such a limitation. While it is true that sedentary work does not include a sit/stand option, SSR 83-12 permits an ALJ to find a claimant capable of sedentary work, in spite of a sit/stand limitation, so long as the limitation is submitted to a vocational expert (VE) for consideration of the limitation's effects on the occupational base. The Ruling provides, in relevant part, as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.) There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. ***Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.***

Soc. Sec. Rul. 83-12, 1983 WL 31253.

In this case, the ALJ properly considered the plaintiff's need to sit and stand, in accordance with SSR 83-12. As the ruling contemplates, the ALJ submitted the limitation to the VE, who then opined in regards to the effect such limitation would have on the occupational base and was able to recommend available work, which the plaintiff could perform. (R. 412-13.) At the hearing, the plaintiff's counsel objected on the same grounds for which he now complains and was given opportunity to cross examine the VE as to the

propriety of his recommendation in light of his client's sit/stand limitation. (R. 414-15.) The VE expressly testified, based upon his own observation and expertise, that the jobs of both ticket seller and surveillance system monitor could accommodate the sit/stand needs of the plaintiff. (R. 412-13, 414-15.)

The VE clarified that the jobs she identified, although not professional or managerial in nature, did provide for a sit/stand option. Accordingly, the ALJ's hypothetical to the VE was proper in light of Ruling 83-12 and the VE testimony constituted substantial evidence to support the Commissioner's decision. *See Walls v. Barnhart*, 296 F.3d 287, 291 (4th Cir. 2002); *Heppell-Libsansky v. Commissioner of Social Security*, Slip Copy, 2006 WL 622745, at *5 n.5 (11 th Cir. 2006). In *Walls*, the Fourth Circuit stated, "The Ruling [SSR 83-12] acknowledges that there are jobs that allow sit/stand options. It directs the agency to consult with a VE to assess the impact of that option on the occupation base. The Ruling does not prescribe a formula for assessing what jobs are available . . . ." *Walls*, 296 F.3d at 291. No "special clarity" is required. *Id*. The Fourth Circuit in Walls concluded that so long as the limitation is submitted to the VE for consideration, the Ruling has been satisfied.

The Court finds that the ALJ fully comported with the strictures of SSR 83-12 and *Walls*. The ALJ consulted with the VE about the implications of the sit/stand option on the occupational base and the VE indicated that he considered the ALJ's directive. (R. 412-13.) Thus, "[t]he ALJ was entitled to rely on the VE's calculations." *Walls*, 296 F.3d at 291.

Further and contrary to the plaintiff's belief that the VE misclassified the recommended jobs, it is of no consequence that "ticket seller" and "electronic surveillance monitor" jobs are considered "light work." *See English v. Shalala,* 10 F.3d 1080 (4th Cir. 1993) (citing DOT, 211.467-030*)*. The social security regulations do not require that the Secretary or the VE rely on classifications in the DOT. *See Sawyer v. Apfel*, 1998 WL 830653, at *1 (4th Cir. 1998); *Conn v. Secretary of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir.1995); 20 C.F.R. § 404.1566(d). Importantly, a VE "can testify whether

particular applicants for disability benefits would be able to perform subcategories of jobs within the DOT." *Lee v. Barnhart*, 63 Fed. Appx. 291(9th Cir. 2003) (citing *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir.1995).

The plaintiff also accuses the ALJ of selectively citing portions of the plaintiff's medical records while ignoring other portions of his history. Contrary to the plaintiff's claim, however, an ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)). Moreover, a formalistic factor-by-factor recitation of the evidence is simply not required. *See Qualls v. Apfel*, 206 f.3d 1368, 1372 (10th Cir. 2000.) It is clear from the ALJ's decision and the transcript of the hearing, including the examination of the VE, that the ALJ adequately considered the entirety of the plaintiff's medical history. (R. 18-20, 22-24.)

The plaintiff further claims that the ALJ exclusively relied on the plaintiff's ability to perform certain activities, like watching his grandchildren or playing in the church choir, to conclude that he was capable of certain sedentary work. These activities were not the exclusive basis for the ALJ's decision and the ALJ relied, in the least, on the expert opinion of the VE and other substantial evidence of record. (R. 20-24.)

The plaintiff summary makes the following additional arguments.

## II.    LIMITATIONS OF THE UPPER EXTREMITY

The plaintiff briefly argues that the ALJ did not consider the plaintiff's ability to use his upper extremities or the effect of the use of a cane on the plaintiff's ability to maintain employment. This allegation is simply not true. First, the plaintiff does not direct the Court to any evidence supportive of his contention that such limitations existed to a disabling degree and that the ALJ failed to consider. Second, the ALJ expressly included the following, in his hypothetical to the VE:

7

> [A]ssume a hypothetical individual . . . who retains the exertional capacity for sedentary work only, with no climbing, crawling, balancing or stooping, **no constant fine manipulation, no more than occasional overhead reaching with the non-dominant arm**, sit/stand option at will, **flexibility to use his can occasionally while upright walking and standing** . . . no repetive neck motion . . . .

(R. at 412 (emphasis added).)

The Court finds that the hypothetical materially includes the limitations of which the plaintiff now complains and for which the ALJ found substantial evidence in support. The plaintiff has not complained with sufficient specificity for the Court to conclude that the ALJ failed to consider or improperly rejected some piece of evidence. Ultimately, the ALJ had substantial evidence to disregard the above limitations as the plaintiff describes them.

The plaintiff underwent successful surgery on his left shoulder in September 2001 and was released back to work in October 2001 (R. 140), more than one year prior to his alleged onset of disability. In September 2003, Dr. Scott L. Korn noted that the plaintiff had little to no disability in his left shoulder, normal upper extremity strength, and normal range of motion of the upper extremities. (R. 312-313.) In addition, two State agency medical consultants determined that Plaintiff had unlimited ability to push or pull hand controls. (R. 260, 316, 348.)

The ALJ did not commit error in analyzing the alleged limitations in the plaintiff's upper extremity or as a result of the plaintiff's use of a cane.

### III.  PERSISTENCE AND PACE

The plaintiff next complains that the ALJ did not discuss the effect of medication and lack of sleep on the plaintiff's pace and persistence and his allegedly diminished ability to maintain employment, as a result. Strangely, the plaintiff again fails to direct the Court's attention to any evidence that the ALJ failed to consider or inadequately considered.

The ALJ specifically determined that the plaintiff's depression had no more than a minimal effect on his ability to perform basic work activities and was a nonsevere

impairment. (R. 21.) The ALJ heard the cross-examination of the VE in regards to the alleged effects of the plaintiff's medication and lack of sleep. (R. at 415-16.) Moreover, substantial evidence exists for the ALJ to have concluded, as he necessarily did, that pace and persistence were not a problem for the plaintiff.

First and significantly, the plaintiff stated, in his disability report, that he had no side effects from any of his medications. (R. 103.) Second, two State agency psychological consultants determined that at the most, the plaintiff's depression caused no more than mild difficulties in maintaining concentration, persistence, or pace. (R. 333, 369.) Lastly, Dr. Anguelova determined that the plaintiff had good ability to maintain attention and concentration. (R. 340.)

## IV.     Combination of Conditions

Finally and most summarily, the plaintiff contends that the ALJ improperly considered the plaintiff's conditions in isolation as opposed to in combination. It is true that the ALJ must take a longitudinal view of the evidence. "The claimant's maladies must be considered in combination and must not be fragmentized in evaluating their effects." *Hicks v. Gardner*, 393 F.2d 299, 300 (4th Cir. 1968); *Paris v. Schweiker*, 674 F.2d 707, 710 (8th Cir. 1982) ("[D]isability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being.") However, there is no indication that the ALJ took anything less than a comprehensive approach. In fact, it is clear from his decision that the ALJ viewed the evidence commutatively. (*See, e.g.*, R. 21.) The plaintiff's assignment of error is without merit.

**CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

*Bruce H. Hendricks*
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

May 2, 2006
Greenville, South Carolina